RECEIVED

11 APR 18 AM 8: 49

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| Guy A. Blume, Blume Investments, LLC, and Royal Professional Solutions, LLC, Pro-Se,<br><br>Plaintiff,<br><br>vs.<br><br>American Dairy Queen, EE Sorenson LLC<br>Edward E. Sorenson<br><br>Defendants | Case No.: 4: 11-CV-00178<br><br>**COMPLAINT FOR A DECLARATORY JUDGMENT, INJUNCTION, DAMAGES, AND** OTHER RELIEF |

Plaintiff, Guy A. Blume, Blume Investments, LLC, and Royal Professional

Solutions, LLC, Pro-Se, for its complaint against American Dairy Queen ("ADQ"), EE

Sorenson, LLC, and Edward E. Sorenson (collectively, "Defendants"), alleges as follows:

### NATURE OF THE CASE

1. This action arose as a result of American Dairy Queen's (ADQ) ignorance to and lack of

   respect of contractual obligations outlined in operating agreements with Guy A. Blume,

   et al ("Plaintiff"), enforcement of franchise fees that were either undocumented or in

   clear violation of the aforementioned franchise operating agreements, common law fraud

   by deception, common law theft, and the blatant violation of anti-trust laws. The action

   by ADQ includes the Audubon, IA store (# 11550) located at 606 South Market Street,

   Audubon, IA., which Blume acquired from Bruce and Marla Lennocker in 2006.

   Blume's decision to purchase the store was based on the assumption of franchise fees of

   $.30 cents per gallon of ice cream mix as was documented in the then-current franchise

operating agreement dated March 18, 1968.  On or about July 13, 2006, a representative of ADQ sent an e-mail stating "we have mailed out the operating agreement dated for your review which will be assigned upon transfer to Guy A. and Pamela K. Blume.  The agreement calls for .30 cents a gallon franchise fees for Store #11550 Audubon, Iowa." Following the official transfer and on-going operations of the Audubon, IA store # 11550, the franchise fees being charged by ADQ were significantly higher than the arrangement presented in the franchise operating agreement. Because this was the first store Blume had purchased, he did not fully understand the potentially damaging financial ramifications of this situation.  When Blume inquired of ADQ about this mix-up, he was instructed to "Shut Up" to which it was further stated, "Oh, you must have signed a new agreement." Subsequently, Blume decided to implement the "Grill & Chill" concept in Johnston, IA to the new format. This decision was based up on documented claims by ADQ representatives that Blume would experience significant increases in revenues, operating profits, and would be subject to incentives of reduced marketing fees and other means to off-set his costs of construction to the new format. The Johnston, IA store officially became a Grill& Chill in August, 2008 at which time no franchise operating agreement was signed nor was a Franchise Disclosure Document (FDD) provided by ADQ.  In his frustration, Blume attempted on numerous occasions to have his pleas for fair dealings heard by ADQ but met with limited response and, in many cases, outright disrespect and resistance to respond in good faith. Blume, in the operation of another franchise location in Ames, IA, was threatened by an ADQ territory representative who repeatedly levied verbal accusations at Blume stating, "he's a crazy M-fer and going to kill someone" followed by the ADQ representative threatening to

punch Blume in the face.  Blume repeatedly called ADQ headquarters and was told that while they (ADQ) were sorry there was nothing that could be done. Other Franchisees have had the same problems.  The aforementioned ADQ representative colluded with ADQ legal counsel to force Blume to cease operations at several of his stores. They did this with little or no notice and through the unethical practice of instructing preferred suppliers to either place Blume on cash on deliver (COD) credit terms or to shut off his supply completely. ADQ debited funds from Blume's bank accounts via ACH without his signed authorization.  The aforementioned acts by ADQ constitute common law fraud and common law theft and violation of anti- trust laws.  Blume seeks as relief a return of all the money that was stolen and relief from the fraud committed by ADQ. Blume seeks an Injunction restraining ADQ from harassing and threatening first and foremost Blume's employees which have heard obscene language from ADQ Territory Representative either directly, indirectly through its representatives and agents.  See Exhibit P Blume Filed a Temporary restraining order in 2010 to protect his Employees from abusive mistreatment by ADQ Territory Representative as well as criminal trespassing.  This harassment continues to this day.  On or about April 15, 2011, store employees in another Blume-owned store in Huxley, Iowa were told directly by Mr. Ed Sorenson that Mr. Blume "will be shut down and all vendor supply cut off.... Because he talked to the president of American Dairy Queen about Blumes misconduct and they have decided to shut him off on supply like they did in Ames." (no notice given)  Several other comments by Mr. Sorenson were malicious and delivered with the full intent to defame Mr. Blume and to significantly harm his business reputation and livelihood.  Complaints about these activities to ADQ have fallen on deaf ears.   Blume asks the court to grant him protection

under the "Iowa Franchise Act." Blume is not an attorney and asks the court for protection under this Franchise statute. The statute states a franchisee may not waive the protections provided by the statute.

## Parties

2.  Blume Investments is an Iowa Limited Liability Corporation that maintains its principal place of business at 4309 NW 5th Street, Ankeny, Iowa, and is therefore a citizen of the state of Iowa.

3.  Royal Professional Solutions is an Oklahoma LLC that maintains its principal place of business at 4309 NW 5th Street, Ankeny, Iowa, and is therefore a citizen of the state of Iowa.

4.  Guy Blume is a citizen of the state of Iowa.

5.  EE Sorenson, LLC is an Iowa Limited Liability Corporation that maintains its principal place of business at 2016 Indian Grass Court, Ames, Iowa 50014.  EE Sorenson, LLC is an alter ego to Edward E. Sorenson. The acts of Sorenson are the acts of EEsorenson, LLC and vice versa

6.  Edward E. Sorenson is a citizen of Iowa and lives at 2016 Indian Grass Court, Ames, Iowa 50014

7.  ADQ is a Delaware corporation that maintains its principal place of business at 7505 Metro Boulevard, Edina, Minnesota, and is therefore a citizen of the state of Minnesota.

## JURISDICTION AND VENUE

8. Court has proper Venue and Jurisdiction over this action pursuant to 28 U.S.C. § 1332, because complete diversity of citizenship exists between the parties and the value of the damages Royal Professional solutions, Blume Investments and Guy Blume seeks is greater than $75,000, exclusive of interest and costs In addition ADQ has the minimum contacts necessary to satisfy due process requirements of the United States Constitution and, Therefore , also satisfy the requirements of the Iowa Long-Arm statute.

9. Blume Investments LLC and Royal Professional LLC Most of the witnesses are from Iowa. Blume is a Resident of Iowa.

10. Court has proper Jurisdiction and Venue over ADQ because the acts were committed In Iowa in concert with EE Sorenson, LLC and its alter ego Edward E. Sorenson.

11. Iowa is the only Venue and Jurisdiction that encompasses all defendants and representatives who may have been party to the case.

## CONDUCT GIVING RISE TO BLUMES CLAIMS

### A. **Audubon, IA Store**

12. Plaintiff, around May of 2006, started doing due diligence on buying a Dairy Queen in Audubon, Iowa from Bruce and Marla Lennocker. Blume filled out the necessary forms and received all the information.

13. Blume reviewed the 1968 operating agreement provided by ADQ stating franchise fees would be calculated at $ .30 per gallon of ice cream mix.  He received confirmation of the Franchise Fees in an e-mail from Defendants which stated "We have mailed out the operating agreement dated March 18, 1968 for your review which will be assigned upon

transfer to Guy A. and Pamela K. Blume. The agreement calls for .30 cents a gallon for franchise fees for the store # 11550 Audubon, Iowa." See Exhibit F

14. Audubon, IA store (#11550) was Blume's first store; a direct license franchise.

15. Blume was charged a different amount or calculation of franchise fees than were paid by Bruce and Marla Lennocker from whom the store was purchased and legal transfer of franchise was made.

16. The prior franchisee paid the same fees for 25yrs.

17. Blume received business loans based on the .30 cents per gallon franchise fees.

18. The Franchise and Advertising fees were over 30 times higher than what was represented.

19. The Defendants actions by not disclosing properly violate FTC laws and Iowa consumer Fraud Laws.

20. Blume paid over four thousand dollars ($4,000.00) to ADQ to facilitate the transfer of the Audubon, IA store.  The Iowa Franchise Act states "actual costs" of the transfer are permissible. It is reasonable to think it would not "cost" nearly $4,000.00 to transfer a store.  On several other store purchases Blume paid several thousand dollars to transfer those as well. Blume paid transfer fees on stores that signed new agreements no transfer occurred.  This was a deception misrepresented by the defendants.

21. Blume received the Golden Sales Award in 2007 for achieving at least 20% increase in sales at the Audubon, IA store.

22. Blume states do to the changes from the existing franchisee paying only .30 cents a gallon and Dairy Queen providing a 1968 agreement for .30 cents a gallon a FDD was required because of the franchisor involvement in the Transfer. ADQ violated "16 CFR

436- Franchise Rule" ADQ also committed consumer Fraud under Iowa Statute 714H

Consumer Fraud act Business opportunity violations

23. Blume talked to Defendants about it and he said "wait a minute" looked it up and said

"you must have signed a new agreement" the inference was Mr. Blume should just live

with it.

24. In October of 2008 Mr. Blume called ADQs Employee corporate counsel and was told to

"Shut Up".

25. Blume states a Bait and switch happened, a "SCAM" Blume believes laws violated by

ADQ violated "16 CFR 436- Franchise Rule".  ADQ also committed consumer Fraud

under Iowa Statute 714H Consumer Fraud act Business opportunity violations.

26. Ignorance is not an acceptable defense for Defendants.

27. Incompetence is not an acceptable defense for Defendants.

28. Dairy Queen's very existence depends on the Franchisees.

29. Blume in 2009 tried to talk to Defendants about Franchise fees but the defendants

threatened to shut him down and they withdrew money without a signed ACH

authorization required by law violating RICO Laws. In fact Blume again tried to stand up

to Defendants and they again withdrew money without any signed authorization. See

Exhibit J a sheet of paper with initials JC who works for Defendants. "Presumably ADQ

signs their own authorization forms" See Exhibit K two accounts ADQ withdrew huge

sums of money out of with no signed authorization as required by law.

30. Mr. Blume has never received an FDD by ADQ for Audubon or any direct license

franchise store.

31. Dairy Queen tried to bully Mr. Blume into silently accepting that the bait & switch was okay.

32. Blume further states given the involvement of Defendants in the transfer process a FDD was required under "16 CFR 436- Franchise Rule" and Common Law Fraud was committed under Iowa code 714H

33. American Dairy Queen has told Blume to "shut up" and have filed frivolous lawsuits with the sole intention of financially ruining Blume and to control Blume's God given right of Free Speech.

34. Defendants failed to make material disclosures as required by law. Blume would have likely been spared the financial losses and other abuse suffered if, before he committed his money he would of received complete and accurate information about American Dairy Queen. However Defendants failed to make timely material disclosures, and such information Defendants supplied contained various deceptions.

35. Iowa requires the registration of the offer and sale of business opportunities. Business Opportunities that are franchises need not register, so long as the franchisor provides the franchisee a disclosure document complying with the "16 CFR 436- Franchise Rule" . However the franchisor can confirm its exemption by filing and exemption with the Iowa Commission of Insurance with the required filing fee. Mr. Blume was not able to verify ADQ ever did this and alleges ADQ has violated Iowa Franchise and Business Opportunity Acts.

B. **Johnston, IA Store**

36. This action arose out of a "scam" by ADQ to promote a failed brand the Grill & Chill.

37. American Dairy Queen reiterated on more than one occasion the desire for American Dairy Queen to attract and promote "young guys in the system" and their legacy operators were older and did not support the new Grill & Chill concept." See exhibit Q

38. Blume States if the Grill & Chill was such a great concept as prescribed by ADQ Representatives. One would think Berkshire Hathaway would own a thousand or more stores.

39. Dairy Queen made earnings claims the Johnston Grill & Chill would do between 750,000 to 1 million in sales these claims were false and No FDD was ever given to Mr. Blume as required by the Federal trade commission. "16 CFR 436- Franchise Rule" Blumes sales never reached close to ADQ's Unlawful earnings claims. ADQs actions may have violated laws under the "Iowa franchise act", " Iowa statute 714H.1 714H.2 714.3 714.4 " "Private Right of action for Consumer Fraud" Under the "Iowa Business opportunity Law" Iowa state antitrust law , "Iowa competition Law " 16 CFR 436- Franchise Rule" unlawful earnings claims "

40. In late 2007, based upon his operating success at Audubon, IA store the American Dairy Queen ADQ Representative disclosed to Mr. Blume that the Johnston, IA store was for sale. American Dairy Queen communicated to Mr. Blume that he could purchase the Johnston, IA store Equipment and turn it into the new Grill & Chill format and that, based upon other historical data, the sales would be between 750 thousand to 1 million annually. Several people will testify to this fact as will Mr. Chris Etten, an employee of Mr. Blume and was present at the meeting. Defendants actions may have violated laws under the "Iowa Franchise Act", " Iowa statute 714H.1 714H.2 714.3

714.4 " "Private Right of action for Consumer Fraud", and Under the "Iowa Business Opportunity Law", "16 CFR 436- Franchise Rule" unlawful earnings claims "

41. In his zeal to promote Mr. Blume through the training process as a new owner of the Grill & Chill format, ADQ sent Mr. Blume via e-mailed the answers to the Grill & Chill test (required of all Franchisees to pass) in order to help him test out of phase one of the operators training. See Exhibit L Mr. Blume assumed this was part of his incentive to start a new Grill & Chill. Since Mr. Blume was previously an absentee owner (Wife Pamela Blume operated stores) and was less not involved in the Dairy Queen business, he rushed through training based on the promises for increased sales and profits claimed by American Dairy Queen. Mr. Blume as required by the Federal trade commission. "16 CFR 436- Franchise Rule" Blumes sales never reached close to ADQ's Unlawful earnings claims. ADQs actions may have violated laws under the "Iowa franchise act", " Iowa statute 714H.1 714H.2 714.3 714.4 " "Private Right of action for Consumer Fraud" Under the "Iowa Business opportunity Law" , 16 CFR 436- Franchise Rule" unlawful earnings claims "

42. American Dairy Queen, through its representatives made is franchise promises to Mr. Blume he would not pay ADQ and royalties for three years. This arrangement was offered as a means to assist Mr. Blume in paying back his investment in the Grill & Chill. American Dairy Queen's representative reiterated on more than one occasion the desire for American Dairy Queen to attract and promote "young guys in the system" and their legacy operators were older and did not support the new Grill & Chill concept.

43. See Exhibit A E-mails officially stating Johnston is a Grill & Chill in August, 2008 at which time no franchise agreement was signed nor was a Franchise Disclosure Document (FDD) provided violating laws under the "Iowa franchise act", " Iowa statute 714H.1 714H.2 714.3 714.4 " "Private Right of action for Consumer Fraud" Under the "Iowa Business Opportunity Law" " 16 CFR 436- Franchise Rule"

44. Mr. Blume was not provided nor did he sign a franchise operating agreement until September, 2008. Following his review of this franchise operating agreement, Mr. Blume subsequently reneged on his signature and invalidated it on all three copies signed by marking a line through his name on the signed document these documents exists between Mr. Blume and ADQ at which time he also initialed his edits. SEE Exhibit B Shows Blumes copy and ADQS copy of not agreeing to assignment of the Brazier agreement.

45. Since the contract presented Mr. Blume was, in fact, a Brazier contract and not a Grill & Chill contract, Mr. Blume felt this was an unethical act and reneged on his signature as was previously affixed thereto. Blume states a Bait and switch occurred as of result of ADQs goal to generate more revenue of the backs of DQ operators. This "SCAM" by ADQ was a means to raise royalties without providing proper disclosures. RICO laws may have been violated by ADQ. ADQ violated "16 CFR 436- Franchise Rule" ADQ also may have committed consumer Fraud under Iowa Statute 714H Consumer Fraud Act Business Opportunity violations

46. As this was occurring, Mr. Blume was then informed by American Dairy Queen Engineering Team that the color scheme applied as part of this Grill & Chill remodel project was incorrect and that it must be replaced according to the corporate palette. See

Exhibit M This mistake was credited to the fact that Mr. Blume had used the "wrong book" to guide him through the complex process.

47. No FDD was ever given to Mr. Blume so he knew the costs associated with starting a Grill & Chill Store. At that time the accounting for the total Grill & Chill remodel of the Johnston, IA store was approximately $90,000 dollars, of which, much of the remodel was required to be replaced at Mr. Blume's own expense. Defendants may have violated "16 CFR 436- Franchise Rule" Defendants also may have committed consumer Fraud under Iowa Statute 714H Consumer Fraud act Business Opportunity violations

48. See Exhibit M the additional expenditure to bring the Johnston, IA store 40360 to the specifications, the remodel costs escalated to over double what was implied before the purchase, No FDD was ever Provided Iowa Franchise laws were broken.

49. The financial incentives as were promised by American Dairy Queen in addition to the reduction in franchise operating fees fell well short of what was promised by American Dairy Queen.

50. Mr. Blume had a verbal agreement with ADQ on a Grill & Chill with No Franchise fees or very little Franchise Fees any reasonable person knows when someone crosses out a signature it means they don't agree. See Exhibit B This is on file with ADQ also.

51. See Exhibit B any Reasonable person would not assign a different Franchise a Brazier Dairy Queen to a Grill & Chill are different formats and in fact receive different marketing materials and required signage.

52. Defendants American Dairy Queen failed to make material disclosures as required by law Blume would of likely been spared the financial losses and other abuse suffered if,

before he committed his money into a Grill & Chill he would of received complete and accurate information about American Dairy Queen. However defendants failed to make material disclosures and such information defendants supplied contained various deceptions.

53. Mr. Blume tried to make his point with defendants but was told to "shut up" Mr. Blume tried to pay the agreed amount to ADQ. This was to no avail and he was told to "Shut Up" and lives with an agreement he never consented to and was threatened with legal action to shut him down if he did not pay. Blume believes this to be an act of extortion. See Exhibit K ADQ just made ACHS out of Mr. Blumes account with no signed ACH form that maybe required by law.

54. On or about November 2, 2010, Blume Investments entered into a business asset purchase with Frauenshue Hospitality group of Minnesota, LLC, for the sale of the Grill & Chill in Johnston.

55. American Dairy Queen again tried to enforce a Brazier agreement for a Grill & Chill which Mr. Blume initialed and crossed off his signature. See Exhibit B Blume needing some money to survive agreed to sign an Escrow agreement. To cover expenses ADQ said Blume owed them for franchise fees on a contract never validated. Blume alleges he was extorted to put money he needed into Escrow for an agreement that was not consummated and he never consented to.

56. In order to facilitate a sale of the Johnston Grill & Chill business, Blume Investments entered into Escrow agreement with ADQ Dated December 10, 2010, of which is Exhibit S. In accordance with Commercial Partners Title, LLC, acting as the escrow agent. The party's agreement stipulated that a court could order direct disbursement of

the 30,500 dollars ADQ stated Blume owed for franchise fees on a Brazier Dairy Queen which Blume did not own.

## C. Red Oak, IA Store

57. Blume purchased the Red Oak, IA Dairy Queen on or about March 2, 2009. This transaction was approved by ADQ. See Exhibit R where ADQ territory representative states "Dairy Queen will not stop you from operating the store we can work on transferring in 2010."

58. During the over 9 months that Blume operated the Red Oak, IA store , all ADQ supplier accounts were transferred to Blume's name. These transferred accounts included ADQ's own USCI warehouse operation. See Exhibit O.

59. American Dairy Queen received and accepted the voluntary submission by Blume of franchise fees for the totality of the 9 months of Blume's operation of the Red Oak, IA store.

60. Exhibit Q and R is communication from ADQ's representatives to Blume to buy the Red Oak, IA store.

61. A Franchise Disclosure Document (FDD), as is required by the Federal Trade Commission (FTC) was ever provided to Mr. Blume. FTC rules state that, if the Franchisor plays a significant role in putting the buyer and seller together, then an FDD is required.

62. Dairy Queen forced the shutdown the Red Oak, IA store thus violating the "Iowa Franchise Act"

63. At no time was an opportunity provided Blume to cure any business or other issues ADQ had with him.  Responses to Blume's inquiries of ADQ about this issue were met with verbal statements such as "Shut Up".

64. A reasonable assumption may be made that by ADQ continuing to receive Blume's voluntary submission of franchise fees for nearly one year, this constitutes a franchise agreement.  As has been stated by ADQ's own representatives, "If it walks like a duck and talks like a duck, it must be a duck"

65. All ADQs Vendors were changed over to Mr. Blume

66. Nine Months later Blume Talks to ADQ Corporate attorney who says "I got you, you little Son of a Bitch hold on let me get Nancy on the Phone" Then in Nancy's presence he states you will never own a DQ again.

67. ADQ may have violated the Iowa Franchise Act. Blume believes Wrongful termination occurred. Blume tried to reach out to ADQ and was told to "Shut Up"

68. Blume states Defendants may have failed to make material disclosures as required by law. Blume would have likely been spared the financial losses and other abuse suffered if, before he committed his money he would of received complete and accurate information about American Dairy Queen. However ADQ failed to make material disclosures, and such information ADQ supplied contained various deceptions.


D. **Grinnell, IA Store**

69. Blume purchased the Grinnell, IA store #15329 and territory rights for Poweshiek County on or about July 28, 2009.  See Exhibit T.

70. Blume subsequently sold the Grinnell, IA store on or about June 15th 2010 to John Vergamini through a legal and ADQ-approved sub-franchise agreement.

71. Blume further states in his Territory Agreement License 3. Company Grants him exclusive rights to Mr. Blume to receive royalties for all Dairy Queen Products sold in Poweshiek County.

72. Blume asked ADQ about selling the "Toy Blizzard Machine" in his exclusive Territory.

73. Blume asked ADQ to provide him sales. ADQ never did. Blume alleges ADQ has violated "Iowa Franchise Act" by encroaching on Blumes Territory

74. Encroachment under the Iowa Franchise Act Franchisees is granted a cause of action. Blume alleges this toy Blizzard maker is damaging the brand and cannibalizing sales in his territory.

75. Blume has tried to enforce his contractual rights for all trademark sales in Poweshiek county to no avail

76. See Exhibit C E-mail from ADQ confirming new owner in Grinnell store 15329.

77. See Exhibit C Sub Franchise agreement for John L. Vergamini

78. Dairy Queen not being able to track who owns what franchise has actually filed a Lawsuit against Mr. Blume on the Grinnell Dairy Queen

79. John Vergamini called ADQ because he found out and talked to a Contract Specialist about him owning the Store she said "I will call you later, I can't think and talk at the same time" Blume alleges this was because ADQ has done so much to cover up wrong doing it does not even know what the truth is. ADQ's organization is much disorganized.

80. Ignorance and incompetence is not a valid defense against Fraud and Federal Trade Commission violations.

81. John Vergamini received a call From Shelly O'Callaghan ADQ corporate attorney stating no records were ever received and ADQ was shutting the store down.

82. Blume then Forwarded information in exhibit C from Danelle Larson "Guy I Can't make the change in our database, or any of the contact information for the sub franchisee, new owners name." Mr. Blume e-mailed back the information.

83. E-mail dated 6/08/2010 from Rhonda Duncan helping with the transfer also. Blume states Rhonda was a huge help sending Blume a franchise agreement he could use on or about 6/11/ 2010. See exhibit C

E .**Ames, IA Store**

84. Blume purchased the Ames, IA store on or around November, 1st 2009. Blume was given consent to purchase the store from the ADQ Territory Representative.  Both John Andrus and Brent Haverkamp were present.

85. Sometime later, the ADQ territory representative said he changed his mind.  His due diligence was running into problems. This was almost three months after the purchase. This was confirmed by an e-mail from his attorney.

86. Guy Blume was upset by due diligence running into problems but later found out that ADQ colluded with their territory Representative to shut him down by cutting off ice cream mix supply (restricting commerce) Blume was shut down without notice forcing him out of  business at the Ames location which  violates both Federal and State antitrust laws specifically "Iowa Competition Act"

87. A Roberts Dairy representative informed Mr. Blume of this action by ADQs territory representative. Several other people were made aware of these actions.

88. The Dairy Queen territory Representative may have defrauded franchisees for years charging a transfer fee when each and every franchisee gets a new franchise agreement when a store sells. At no time during this process does a transfer ever take place as each operator signs new franchise operating agreements.

89. The Territory representatives harassment became untenable Mr. Blume reached out to ADQ like many other Franchisees have in the past and they said sorry nothing we can do. Mr. Blume has not been able to stop this harassment to this very day. Blume further states he has been told kids that are working there are scared of this ADQ representative. Exhibit P Blume Filed a Temporary restraining order in 2010 to protect his Employees from abusive mistreatment.

90. ADQ representatives have showed up in Mr. Blumes Huxley Dairy Queen laughing with the territory representative about shutting Blume down in the Ames location several people will attest to this.

91. ADQ was shutting down Ames and Red Oak at the same time. Blume tried to stand up for himself by contacting ADQ Corporate and his pleas fell on deaf ears.

92. Blume was being harassed by both the ADQ Territory Representative and American Dairy Queens corporate office he was forced to file a restraining order against ADQ territory Representative because he was saying he is a "crazy m-fer going to kill someone" threatening to punch Mr. Blume in the face. Blume felt the need to protect his employees. See Exhibit I Blumes filing of a Temporary restraining order against ADQs territory representative in Ames Iowa on or around April 1 2010.

93. To this day ADQs Territory representative either calls the store or stops in Blume's Huxley store always being confrontational and threatening scaring the employees.

After Blume survived what he believes are illegal terminations under the "Iowa Franchise Act" ADQ put Blume on COD without telling Mr. Blume causing his stores to run out of product violating "Iowa antitrust laws" Specifically "Iowa Competition Law. Blume was never given any notice of this. Blume believes this was an act to bankrupt him. Blume feels defendants have went to great lengths to shut him up. Blume is fearful every day of him or one of his employees of getting maimed or hurt by ADQ representatives. Blume has talked to other franchisees of things of this very nature.

94. Blume contacted Hawkeye Food Service representatives and they were real nice and apologetic and said "ADQ told us to put you on COD" Blume asked who said this from ADQ and they did not remember. No money was owed to Hawkeye. Blume cash flow was diminished further by ADQ's violations of Iowa Antitrust laws stopping commerce.

95. In the early stages of his period of dissatisfaction, his only contact with American Dairy Queen was via internal corporate counsel who subsequently retired.  He was then put in contact with external corporate counsel (Shelly O'Callaghan) who was woefully inadequate at responding to his claims in a professional and timely manner. Mr. Blume's frustration level escalated to a point where he felt his only recourse was to try and get United States Government to stop the egregious transgressions of American Dairy Queen. As a franchisee you just want to be treated with respect and be able to talk to the Franchisor without being told to shut up not even being able to say a complete sentence.

F. **Violations of Rules of Professional Conduct**

96. Dairy Queen has pushed Mr. Blume to the point of financial ruin. They have pushed Blume to the point of Bankruptcy with the above actions.

97. Blume believes Defendants have violated rules of professional conduct. Blume further states he believes these acts were designed to cover up criminal acts were committed by ADQ and Berkshire Hathaway representatives and employees. There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity. Blume certainly thinks ADQ employees who practice law may have been in violation of Iowa Rules of Professional Conduct32:1.1, 32:1.8, and 32:5.6.

97. Guy Blume states the government exercises its rights to protect him and his family along with employees and steps with Enforcement actions against Defendants.

98. Blume believes either the Federal Trade Commission or Iowa Attorney General will step in with enforcement action. Under the Iowa Common Law Fraud 714H and Federal Trade commission under disclosure laws and maybe the Sherman Act which is very similar to the Iowa competition Law

**Attorney General Notification**

99. A party filing a petition, counterclaim, cross petition, or pleading, or any count thereof, in intervention alleging violation under this chapter within seven days following the date of filing such pleading, shall provide a copy to the attorney general and, within seven days following entry of any final judgment in the action, shall provide a copy of the judgment to the attorney general certified mail.

Upon timely application to the court in which an action involving an issue raised under this chapter is pending, the attorney general may intervene as a party at any time or may be heard at any time. The attorney General failure to intervene shall not preclude the attorney General from bringing a separate enforcement action.

100. Mr. Blume will certainly forward this to the FTC and the Iowa Attorney General.   Mr.

Blume does not have the massive legal check book like the defendants, Blume hopes the

FTC steps in to protect consumer rights, or attorney General will step in and immediately

investigate. Mr. Blume has had to file temporary restraining no trespass orders in Story

County against ADQ territory Representatives. Mr. Blume will file another one to protect

his employees from the abusive treatment of the Defendants.

**Count 1**

**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF ARISING FROM FRAUD**

**CONSUMER FRAUD ACT: UNFAIR AND DECEPTIVE ACTS AND PRACTICES**

101. Paragraphs 1through 100 are incorporated herein by reference

102. Defendants' acts and practices as described violate Iowa Code § 714.16, 714.3 H and

714.5H

103. Although it is not necessary to establish a reliance damages or intent to deceive to

obtain injunctive relief or reimbursement under the Consumer Fraud Act (See paragraphs

1,13,17,21,22,25,39,41,42,43,68), establishing these factors, is nevertheless relevant inter

alia to the Courts determination of the appropriate scope of injunctive relief and the

appropriate amount of civil penalties. Those acts and practices of the Defendants in

violation of the Consumer Fraud Act as alleged in this count did in fact cause damage to

consumers (Blume), and/or were in fact intentional.  Mr. Blume was provided

information deemed to be reliable in Audubon, IA and the prior owner was paying 30

cents per gallon of ice cream mix for 25 years.   With ADQ's providing Blume a 1968

operating agreement then changing an assignment to a 1981 agreement increasing the

franchise fees more than 30 times.   Mr. Blume was told to "shut up" and no Franchise

Disclosure Document (FDD) was provided.  Mr. Blumes Johnston, IA Grill & Chill was

not provided a Franchise Disclosure Document (FDD) and Mr. Blume was presented

with inaccurate and misleading earnings claims to past and future performance base upon

the change to the new Grill & Chill format.  The future formula for determining franchise

fees under the "incentive" was also misrepresented.

Excerpts from the Iowa Consumer Fraud Act follow:

A.    OVERVIEW

1.    Elements:

a.  A **consumer who**

b.  Suffers **an ascertainable loss of money or property**

c.  As the **result of a prohibited practice or act** in violation of this statute

d.  May bring an action at law to recover **actual damages.**

2.    Although Chapter 714 H is new, several significant terms have the same

definition in § 714.16

3.    Any material misrepresentation is any untruthful statement which is likely to

affect a consumer's conduct or decision with regard to a product or service

104. By reason of the conduct described above Defendants, including American Dairy Queen

(ADQ), have committed fraud by deceit.   Defendants have threatened physical violence

against Mr. Blume all for the sake of keeping Blume quiet to cover up their fraud.

105. In addition, Blume will suffer prejudice to his rights and will continue to incur

immediate, irreparable, and substantial harm, unless this court issues a preliminary and

permanent injunction enjoining Defendants from their continued acts of deception and fraud. Moreover, the issuance of an injunction here is in the public's interest. Finally, Blume has no adequate remedy at law to protect its substantial business property rights. Least of these remedies is action by the Iowa Attorney General and Federal Trade Commission (FTC). Plaintiff is asking this court to step in immediately to protect his employees and his business properties. Plaintiff asks this court to step in to protect Blume and his employees from physical harm. Plaintiff alleges employees have been called obscene names by American Dairy Queen Representatives.

## Count II

## BUSINESS OPPORTUNITY PROMOTIONS ACT DISCLOSURE DOCUMENTS

106. Paragraphs 1 through 100 are incorporated herein by reference

107. Defendants promotion, advertising, and sale of business opportunities violate the provisions of Iowa Code Ch. 551 A, which chapter (inter alia) requires specified disclosures to prospective customers, prescribes the form and content of contracts, and regulates the manner in which business opportunities are to be promoted, advertised and sold and registered.

108. Defendants did not disclose pertinent facts required by the Iowa code A disclosure document prepared pursuant to the Federal Trade Commission rules relating to disclosure requirements and prohibitions concerning franchising and ventures in accordance with 16 C.F.R. § 436 or any successor regulation. In failing to provide Mr. Blume an FDD triggered filing requirements under The Business Opportunity Act which Defendants did not perform as is required by law. Blume also alleges Defendants did not have an exemption request with the Iowa Commissioner of Insurance, with the required filing fee.

Defendants did not provide any Disclosure as required by law to Mr. Blume that allowed him to weigh the merits of the company and its representation of the business opportunity.

## COUNT III

## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

## FEDERAL AND STATE ANTI TRUST LAWS (THE IOWA COMPETITION LAW)

109. Paragraphs 1 through 100 are incorporated herein by reference

110. Defendants acts as described above violate Iowa Competition Law 553, 553.4 Restraint prohibited. A contract, combination, or conspiracy between two or more persons shall not restrain or monopolize trade or commerce in a relevant market. [C97, §5060, 5061; S13, §5067-a; C24, 27, 31, 35, 39, §9906, 9907, 9915; C46, 50, 54, 58, 62, 66, 71, 73, 75, §553.1, 553.2, 553.10; C77, 79, 81, §553.4]

111. By reason of the conduct described above, Defendants have cut off supply to Mr. Blume's Dairy Queen stores, an act designed to cause him financial harm, restrain his businesses, and to cause him to shut down his operations, thus violating federal and state anti-trust laws. Blume's claims of being put on COD credit terms when no money was owed to the food vendor (ADQ's own USCI Warehouse) was witnessed by several people. Blume's supply being cut off completely in Ames, IA was also common knowledge to many people.

112. Plaintiff alleges Defendants, to this very day, are working to shut off supply at other locations to stop Blume from having free speech to cover up ADQ's illegal activities.

113.  In addition, Plaintiff will suffer prejudice to its rights and will continue to incur immediate, irreparable, and substantial harm, unless this court issues a preliminary and permanent injunction enjoining Defendants from violating not only anti-trust laws but from actually inflicting physical harm to Blume and his Associates, as was threatened in the past.

## Count IV

## DECLARATORY JUDGEMENT AND INJUNCTIVE RELIEF COMMON LAW THEFT, FRAUD, EXTORTION AND RELATED OFFENSES

114. Paragraph 1 through 100 are incorporated in herein by reference

115. Defendant American Dairy Queen had no signed authorization to debit money out of Blume's accounts and these acts of the Defendant constitute theft.  ADQ has debited money out of Blume's account and has not provided any signed authorization forms as required by law.  Defendant charged transfer fees when no transfer existed.  Every time a person sold as store, a new contract was executed.  Plaintiff has made attempts to protect his assets.

116.  Plaintiff alleges ADQ has extorted money out of his accounts by threatening legal action, even though ADQ had no contractual agreement to receive franchise fees in the amount they stated or, in some cases, not at all.

117. In addition, Plaintiff will suffer prejudice to its rights and will continue to incur immediate, irreparable, and substantial harm, unless this court issues a preliminary and permanent injunction enjoining American Dairy Queen (Defendants) from acts of theft,

fraud, extortion, and related offenses which harm Plaintiff and his businesses. Plaintiff prays the court for immediate relief.

## Count V

## RULES OF PROFESSIONAL CONDUCT

118. Paragraphs 1 through 110 are incorporated in herein by reference

119. Defendants employees may have misstated facts to cover up the crime or fraud so it could be committed with impunity. Many of Defendants employees will go to great lengths in covering up misdeeds. Iowa Rules of Professional Conduct 32:1.1, 32:1.8, and 32:5.6 are cited. Some of ADQs employees have embarked on criminal, fraudulent, and prohibited behavior and several of these employees were licensed to practice law.

120. Plaintiff asks this court or any other overseeing body to look into this to protect others from this alleged criminal activity.

## Count VI

## DECLARATORY RELIEF ARISING FROM BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

121. Paragraphs 1 through 110 are incorporated herein by reference

122. Implied in the Iowa Franchise Act is a duty of "Good Faith" and is defined as "honesty in fact and the observance of reasonable commercial standards in fair dealing in the trade" where Defendants have breached this implied covenant of good faith and fair dealing.

123. Plaintiff alleges at no time have acts of good faith been exhibited by Defendants.

124. Plaintiff has been told to "shut up" at numerous times and was prohibited from being granted opportunities to discuss his contractual rights, business dealings, and financial terms with Defendants.

125. Plaintiff and his associates have been threatened by Defendants to cause them physical harm.

126. In addition, Plaintiff will suffer prejudice to its rights and will continue to incur immediate, irreparable, and substantial harm, unless this court issues a preliminary and permanent injunction enjoining Defendants from acts of ill will in their business dealings. Plaintiff prays the court for immediate relief.

## Count VII

### Damages

127. Paragraph 1 through 100 are incorporated in herein by reference

128. Blume is entitled to damages for charges described above, as well as damages attributable to Defendants misconduct.

129. Blume reserves the right to assert additional counts that are revealed by further investigation or by discovery.

## PRAYER

**WHEREFORE,** Plaintiff prays the court to grant the following relief:

1. Pursuant to Iowa Code § 714.16, 714.3 H and 714.5H "Consumer Fraud" and upon further request by the Plaintiff addressed to the court, enter a temporary restraining order and preliminary injunction restraining Defendants, and each of them (as applicable such Defendants' directors, officers, principals, partners, employees, agents, servants,

representatives, subsidiaries, affiliates, successors, assigns, parent or controlling entities, and all other persons acting in concert with or participating with Defendant who have active notice of this Court's injunction, from engaging in the deceptive, misleading, emissive, and unfair practices alleged in this petition or otherwise violating the Iowa Consumer Fraud Act, and/or from engaging in any violations of the Business Opportunity Law.

2. After trial on the merits, make permanent the above described injunctions so these Defendants do not return to the unlawful practices alleged herein.

3. Blume is awarded Declaratory Judgment on Johnston, IA store under "16 CFR 436-Franchise Rule" (unlawful earnings claim), "Iowa Franchise Act", and common law fraud as prescribed by 714H of the Iowa Statute.  Equitable relief and damages the court deems just and proper.

4. All franchise fees and advertising money collected over 30 cents per gallon of ice cream mix since store was purchased by Royal Professional Solutions, LLC for store #11550 Audubon, IA be returned plus equitable relief and damages the court deems just and proper.

5. All franchise fees and advertising money collected for the operation of the Johnston, IA store plus equitable relief and damages the court deems just and proper.

6. Federal Trade Commission (FTC) and the Iowa Attorney General both take enforcement action to protect franchisees against Defendant's future egregious actions.

7. Award Mr. Blume all attorney fees, costs and disbursements incurred in this matter;

8. Damages awarded for Ames, IA under the Iowa Franchise Act and equitable relief the court deems proper and just in violation of antitrust laws.

9. Injunctive relief for defamation committed at the Ames, IA and Huxley, IA stores as it was committed by the Defendants.

10. Damages awarded for Red Oak, IA store under the Iowa Franchise Act for common law fraud plus equitable relief the court deems proper and just.

11. A judgment ordering Defendants to return all transfer fees collected over the actual cost to facilitate a transfer as stated by the Iowa Franchise Act.

12. Enforce under Territory Operating Agreement for Grinnell, IA that Blume be awarded royalties based on his territory rights and contractual agreement for all sales of the infamous Toy Blizzard Maker and any other Dairy Queen trademarked item sold within the territory, as defined.

13. Return all monies debited from Plaintiff's accounts without signed authorization.

14. Return all franchise fees collected over the contractual amounts.

15. Plaintiff further seeks financial damages incurred under the Iowa Franchise Act.

16. An award directing all payments held in escrow accounts.

17. An award of such relief as the Court deems just and proper.